Filed 8/4/22  In re M.V. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.V., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078469 |
| Plaintiff and Respondent, | (Super.Ct.No. J290756) |
| v. | OPINION |
| J.V., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, David Guardado, Deputy County Counsel for Plaintiff and Respondent.

At a jurisdiction hearing, the juvenile court found defendant and appellant J.V. (Father) places his daughter, M.V. (born Nov. 2015; Minor), at risk of serious physical harm due to his drug abuse and domestic violence (Welf. & Inst. Code, § 300, subd. (b)(1))[1]; that he places Minor at risk of serious emotional damage due to sexual abuse (§ 300, subd. (c)); and that he had committed sexual abuse (§ 300, subd. (d)). At the disposition hearing, the juvenile court ordered Minor removed from Father's physical custody, denied Father reunification services, and denied Father visitation. Father contends the jurisdictional findings are not supported by substantial evidence. Additionally, Father asserts the juvenile court erred by removing Minor from Father's custody and denying visitation. We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

A.   DETENTION

Pursuant to a family court order, Father and M.Z. (Mother) shared 50/50 physical custody of Minor. In the past, when Mother and Father were dating, "[Father] was violent and abusive towards [Mother]. [Mother said] anytime she and [Father] would have arguments it would lead to physical abuse. [Mother said that Father] would most of the time hit her underneath her waist so the bruises would not be visible. [Mother]

---

[1] All subsequent statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

reported there was also verbal and emotional abuse.  [Mother had] pictures of bruises that she [said] happened when [Father] would beat her leaving huge marks."

In "January 2021, [Mother] obtained a restraining order [against Father] for domestic violence."  Mother sought the restraining order because "[Father] came to [Mother's] home and kicked down the door in the presence of the children[2]."

Between January and March 2021, Father sent Mother videos "of him masturbating with [Minor] laying in the bed, in the background asleep."  Father "film[ed] himself masturbating (with his penis in full view) while the child is laying in the bed.  In a second video, the child is seen moving underneath the blankets and appears to be awake.  [Father] has his penis fully exposed and appeared to be under the influence.  In the video, [Father] is asking [Mother] if he can come over to her home as he continues to masturbate."

Mother informed the family court of the videos of Father masturbating next to Minor.  In response, the family court stopped Father from having overnight physical custody of Minor but allowed him to have physical custody of her from 8:00 a.m. to 1:00 p.m. Monday through Saturday.

On June 3, 2021, Mother "picked [Minor] up from [Father's] home and [saw] what appeared to be a Herpes on the child's lip and discharge in her underwear [so] she took [Minor] immediately to the Community Hospital of San Bernardino."  Minor was suffering from a urinary tract infection "which appeared to be suspicious."  On

---

[2]  Mother has two more children by a different father.

3

September 29, 2021, a Rialto police officer investigated "a previous referral for June 03, 2021, for sexual abuse" involving Minor. Upon investigating, the police "contacted [San Bernardino County Children and Family Services (the Department)] and requested an immediate response."

Mother told the social worker that "[Father] is very aggressive and she believes he is back using methamphetamines." "[Mother] reported [Father] being in a car accident with [Minor] in the car with him and calling [Mother] to come and get [Minor] and he left the scene. [Minor] was injured with a gash on the left side of her face above her eyebrow. . . . [Minor] disclosed to [Mother] that she was not strapped into the car seat."

On September 30, 2021, the juvenile court signed a detention warrant, and the Department detained Minor from Father's physical custody. Rialto police officers assisted the Department in detaining Minor from Father. When Minor was detained, Father was arrested on outstanding warrants for driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)); possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)); possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a)); vandalism (Pen. Code, § 594, subd. (b)(2)(A)); and unauthorized entry into a residence (Pen. Code, § 602.5, subd. (a)). Father was released from custody the same day.

B.     JURISDICTION AND DISPOSITION

Mother said Father abused her when she was pregnant, and "the police were involved" at the time of that abuse. Father abused Mother again approximately one year

4

later.  Mother was arrested as a result of that incident, but the charges were dropped.  During that incident, Father struck Mother below her waist.  Mother said that, "[o]n one occasion, [Minor] had bruises from getting spanked by a belt and she had also had what appeared to be finger marks on her arm."  Mother enrolled Minor "in school in 2019 and shortly after [Father] got into a fight with school staff.  [Mother] also shared that [Father] got aggressive with [Minor's] doctor after he was denied entry to the exam."  Further, Mother reported that Minor once found a drug pipe while in Father's care, which caused Mother to be "concerned [Father] was using marijuana or meth again."  Father failed to appear for drug tests on October 5, 2021; November 15, 2021, December 3, 2021; December 29, 2021; January 3, 2022; and January 14, 2022.

Father told a Department social worker that he has "a long history of battling with [Mother] for custody of [Minor]"  "[Father] reported [Mother] has a boyfriend that is abusive to her."  Father has photographs of Mother's injuries from her boyfriend's abuse.  Father said he was the victim of Mother's domestic violence.  During one incident, Mother suffered "injuries on her knees and forearms," but, according to Father, if he struck Mother during that incident, then it was self-defense.

In regard to kicking-in the door at Mother's home, Father said "he went to [Mother's] home at her request because the boyfriend had threatened [Mother].  The boyfriend had a gun. . . .  [Father] admitted he kicked her door down to get in."  As to drug use, Father used marijuana earlier in 2021 "to deal with [a] back injury."

In regard to masturbating in Minor's presence, "[Father] reported that he put [Minor] to sleep and that was when he was on [a] video 'cam' with [Mother] at

[Mother's] request. . . . [Father] denied [Minor] was in the video or that she could see what he was doing. [Minor's] face was not in the video. . . . [Father] again reported he loves his daughter and would not do anything like what he is accused of." Minor denied being sexually abused by Father.

Mother denied that her current boyfriend is abusive. Mother showed the social worker "videos that depict [Father] fighting with her boyfriend at her work site. . . . She reported the injuries to her eye and leg [in a photograph were] from [a] 2016 incident of domestic violence by [Father]. [Mother] also provided pictures of [a] threat by [Father] with a gun taken on 12/06/20."

At the jurisdiction hearing, Father's attorney asserted that the domestic violence was initiated by Mother; Father does not abuse controlled substances; Father did not have "any inappropriate contact with [Minor]"; and Father was not in a hit and run car accident. In regard to the missed drug tests, Father's attorney said Father would "try[] to be better about that." Father's attorney asserted Mother made the allegations as part of the "long history of battling for custody of [Minor]"

Minor's attorney argued, "In the second vi[deo], [Minor] is seen moving underneath the blankets and appears to be awake. The other concerning part of this is that the officer opines it appears Father appears to be under the influence as he continues to masturbate . . . . I would ask the Court find the allegations true."

The Department's attorney asserted that "[Minor] was at risk of sexual abuse" because she was in the same bed as Father while Father was under the influence and masturbating. The Department's attorney contended the events were "not made-up" by

6

Mother because they were "documented by video by [Father]. So to claim that this is all something that Mother did to him is kind of ridiculous." In regard to the substance abuse allegations, the Department pointed to the evidence that Father appears to be under the influence in the second video and Father failed to take any of the drug tests.

The juvenile court said, "[Father is] masturbating and filming himself. [Minor] is in bed with him. It is two separate videos. . . . The evidence is pretty clear. So I'll sustain the allegations." The juvenile court placed Minor in Mother's care on a plan of family maintenance. When explaining the denial of reunification services for Father, the juvenile court said, "It's not in the child's best interest, based on the fact that [Father's] in denial about what he did." When denying visitation, the juvenile court said, "My analysis is really just on it's not in the best interest of the minor, and the minor would suffer no detriment by not having visits with Dad."

## DISCUSSION

### A.     JURISDICTION

Father contends the juvenile court's jurisdictional findings are not supported by substantial evidence.

" 'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

7

1. *PHYSICAL HARM*

The juvenile court found Minor is at substantial risk of suffering serious physical harm. (§ 300, subd. (b)(1).) The facts that were alleged to support the physical harm finding pertained to Father having substance abuse issues and engaging in domestic violence in Minor's presence.

A child comes within the jurisdiction of the court under section 300, subdivision (b)(1), when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse." (§ 300, subd. (b)(1).)

a. Substance Abuse

We begin with the evidence of Father's substance abuse. At the detention hearing on October 5, 2021, the juvenile court told Father, "Failure to test will be considered a positive test." Father failed to appear for drug tests on October 5, 2021; November 15, 2021, December 3, 2021; December 29, 2021; January 3, 2022; and January 14, 2022. Mother reported that Minor once found a drug pipe while in Father's care, which caused Mother to be "concerned [Father] was using marijuana or meth again." In the second video that Father sent to Mother, Father "appeared to be under the

8

influence." The evidence of missed drug tests, drug paraphernalia, and Father appearing intoxicated constitute substantial evidence that Father abuses drugs.[3]

We turn to whether there is substantial evidence of Minor being at substantial risk of serious physical harm due to Father's substance abuse. (§ 300, subd. (b)(1).) "[Mother] reported [Father] being in a car accident with [Minor] in the car with him and calling [Mother] to come and get [Minor] and he left the scene. [Minor] was injured with a gash on the left side of her face above her eyebrow. . . . [Minor] disclosed to [Mother] that she was not strapped into the car seat."

The foregoing evidence indicates that Father fails to properly strap Minor into her car seat when he is driving. Thus, Minor is at substantial risk of serious physical harm because she could be injured in a car accident if Father drives while intoxicated. Accordingly, the jurisdiction finding (§ 300, subd. (b)(1)) is supported by substantial evidence.

### b. Domestic Violence

We examine whether Father engaged in domestic violence. When Mother and Father were dating, "[Father] was violent and abusive towards [Mother]. [Mother] reported anytime she and [Father] would have arguments it would lead to physical

---

[3] When Minor was detained, Father was arrested on outstanding warrants for driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)); possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)); and possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a)). The record does not indicate the outcome, if any, of Father's criminal case(s). Because we presume Father is innocent until proven guilty (Pen. Code, § 1096), we do not rely on the arrests in this substantial evidence analysis.

abuse. [Mother] reported [Father] would most of the time hit her underneath her waist so the bruises would not be visible." In "January 2021, [Mother] obtained a restraining order [against Father] for domestic violence." The restraining order is valid through February 5, 2023.

In Mother's request for the restraining order, she asserted that Father came to Mother's place of work to drop off Minor. Father yelled at Mother about causing him to be late, threw Mother's cell phone on the floor, struck Mother's shoulder with a closed fist and shoved her. A third person witnessed the shove and asked Mother if she needed help, and the incident ended. The foregoing evidence supports the finding that Father engaged in domestic violence by striking and shoving Mother.[4]

We turn to whether Minor was at substantial risk of suffering serious physical harm due to Father's inability to supervise or protect Minor during the incidents of domestic violence. (§ 300, subd. (b)(1).) When Father struck Mother's shoulder and shoved her, they were meeting to exchange physical custody of Minor. Thus, one can reasonably infer Minor was in the vicinity of the domestic abuse.

In the restraining order application, Mother alleged that, in 2019, Father came to pick-up Minor from Mother's residence, and Minor told Father that Mother's boyfriend had visited. Father "flipped out and came inside [Mother's] home trespassing and threw things . . . . [Father] went back outside to his car yelling and cursing. He came back

---

[4] In July 2016, Father was arrested for domestic violence (Pen. Code, § 273.5, subd. (a)), but the record does not indicate any disposition for the criminal case. Because we presume Father is innocent until proven guilty (Pen. Code, § 1096), we do not rely on the arrest in this substantial evidence analysis.

rushing towards [Mother's] apartment door[. Mother] locked the door and he kicked it at least four to five times and the door came off the hinges. [Mother] immediately called 911." During that incident, Father "left [Minor] outside [in] the car." Thus, one can reasonably infer that Minor was present when Father went "back outside to his car yelling and cursing" and then rushed back to Mother's door to kick it in.

The foregoing evidence indicates that domestic violence occurs when Mother and Father exchange physical custody of Minor, and thus Minor is present during the incidents. As a result, Minor is at substantial risk of suffering serious physical injury due to accidentally being struck by Father's fist or a thrown object, e.g., a cell phone, during the episodes of domestic violence.

Moreover, Mother said that "[o]n one occasion, [Minor] had bruises from getting spanked by a belt and she had also had what appeared to be finger marks on her arm." This is further evidence that Father fails to protect Minor from violent conduct because it indicates she is punished to the point of marks and bruises being left on her body. In sum, substantial evidence supports the juvenile court's jurisdictional finding (§ 300, subd. (b)(1)).

2. *EMOTIONAL DAMAGE*

The juvenile court found Minor is at risk of suffering serious emotional damage due to Father exposing Minor to inappropriate sexual conduct. (§ 300, subd. (c).)

A child comes within the juvenile court's jurisdiction when the child is "at substantial risk of suffering serious emotional damage, evidenced by severe anxiety,

depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent." (§ 300, subd. (c).)

We examine whether substantial evidence supports the finding that Father inappropriately exposed Minor to sexual conduct. Between January and March 2021, Father sent Mother two videos of himself masturbating. In the second video, Father's "penis [was] fully exposed"; Father "is speaking to the camera appearing to attempt to entice [Mother]"; and Minor was in the bed with Father, apparently awake because she was moving. Thus, the evidence indicates that Minor was awake in bed next to Father, while Father masturbated with his penis fully exposed, and Father spoke to the camera, which would have likely caught Minor's attention. Therefore, there is substantial evidence that Father inappropriately exposed Minor to sexual conduct.

Next, we determine whether substantial evidence supports the finding that Minor was "at substantial risk of suffering serious emotional damage" due to Father's conduct. (§ 300, subd. (c).) Mother noticed that Minor had "aggressive behavior [and] mood swings . . . when she came back from visits [with Father]." Minor's behavior improved after Minor ceased having contact with Father on September 30, 2021. The foregoing evidence indicates that being in Father's presence caused Minor to act aggressively. One could reasonably infer that Minor acted aggressively, in part, due to Father's inappropriate sexual conduct. Therefore, it is reasonable to conclude that Minor is at substantial risk of suffering serious emotional damage, such as "aggressive behavior toward [her]self or others," due to Father's inappropriate sexual conduct. (§ 300, subd. (c).)

12

### 3.    *SEXUAL ABUSE*

The juvenile court found Minor had been sexually abused or was at substantial risk of being sexually abused.  (§ 300, subd. (d).)

A child comes within the juvenile court's jurisdiction when "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by the child's parent."  (Welf. & Inst. Code, § 300, subd. (d).)  Sexual abuse includes "[t]he intentional masturbation of the perpetrator's genitals in the presence of a child."  (Pen. Code, § 11165.1, subd. (b)(5).)

Father contends "there is no evidence that he had intentionally exposed [Minor] to the [sexual] behavior."  The statute requires intentionally masturbating in a child's presence—not intentionally exposing the child to masturbation.  The evidence indicates Father recorded himself masturbating while making comments intended to entice Mother, which indicates Father was aware of what he was doing and meant to be masturbating.  Father was aware that Minor was in the bed next to him because he admitted that he put her to bed before masturbating.  Thus, substantial evidence supports the finding that Father intentionally masturbated in Minor's presence.

Moreover, if the law required intentionally exposing Minor to masturbation, then there is substantial evidence of that as well.  Minor was in the bed next to Father, who was masturbating, recording himself, and talking.  Father's multitasking indicates that he was sufficiently alert to know that Minor was in the bed next to him.  Minor was moving, which would cause an alert person to realize that Minor was awake. Nevertheless, Father continued masturbating with "his penis fully exposed."  Further,

13

Father spoke into the camera, which indicates that Father intentionally exposed Minor to his behavior because he was not masturbating quietly or surreptitiously. The foregoing evidence constitutes substantial evidence that Father intentionally exposed Minor to his masturbation. (Pen. Code, § 11165.1, subd. (b)(5).)

Father asserts there is "no evidence she actually saw Father masturbating." The law prohibits "intentional masturbation of the perpetrator's genitals in the presence of a child." (Pen. Code, § 11165.1, subd. (b)(5).) Thus, the relevant legal element is a child's presence—not a child's observation of the sexual activity. Nevertheless, the evidence reflects Minor was moving, which indicates she was awake; Father was talking, which would likely have drawn Minor's attention; and Father's "penis [was] fully exposed." Thus, if a child's observation were required, then one can reasonably infer from the circumstantial evidence that Minor witnessed Father masturbating. (*People v. Brooks* (2017) 3 Cal.5th 1, 57 [" 'Substantial evidence includes circumstantial evidence' "].)

Father contends there is no evidence that Father's masturbation was motivated by a sexual interest in children. One of the statutorily enumerated forms of sexual abuse is child molestation. (Pen. Code, §§ 11165.1, subd. (a), 647.6.) Child molestation occurs when a defendant "annoys or molests any child" (Pen. Code, § 647.6, subd. (a)(1)), and defendant is " ' " 'motivated by an unnatural or abnormal sexual interest.' " ' " (*In re L.O.* (2021) 67 Cal.App.5th 227, 224.)

In the instant case, the juvenile court did not find that Father sexually abused Minor by molesting her. (Pen. Code, § 11165.1, subd. (a).) Rather, the juvenile court

found that Father sexually abused Minor by intentionally masturbating in her presence. (Pen. Code, § 11165.1, subd. (b)(5).)  There is no motive requirement for intentional masturbation.  (Pen. Code, § 11165.1, subd. (b)(5).)

The subdivision pertaining to masturbation provides, "Conduct described as 'sexual assault'[5] includes, but is not limited to, all of the following:  . . . [¶]  The intentional masturbation of the perpetrator's genitals in the presence of a child."  (Pen. Code, § 11165.1, subd. (b)(5).)  "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted."  (Code Civ. Proc., § 1858; *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998; *People v. Guzman* (2005) 35 Cal.4th 577, 587.)  There is no language in Penal Code section 11165.1, subdivision (b)(5), that requires a motive.  We cannot insert such a requirement.  Therefore, we will not examine whether there is substantial evidence of Father's motive.

Father asserts there was no "evidence that [Minor] was actually sexually abused . . . .  When Mother took [Minor] to the hospital for a physical examination, there was nothing suspicious seen."  Contrary to Father's position, when Mother took Minor to the hospital, Minor was diagnosed with a urinary tract infection, "which appeared to be suspicious."  Therefore, we are not persuaded that "there was nothing suspicious seen."

---

5  " '[S]exual abuse' means sexual assault."  (Pen. Code, § 11165.1.)

15

B.      <u>REMOVAL ORDER</u>

Father contends the juvenile court erred by ordering Minor removed from his custody because substantial evidence does not support the finding that Minor is in danger in Father's custody. The standard of review is set forth *ante*, so we do not repeat it here.

"A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

As set forth *ante*, there is substantial evidence that Father has a substance abuse problem and drives Minor without securing her in a car seat. Thus, there is evidence that Father places Minor at risk of being injured in a car accident due to Father driving while intoxicated.

At the detention hearing on October 5, 2021, the juvenile court said to Father, "I need you to [drug] test today." Father failed to appear for drug tests on October 5, 2021; November 15, 2021, December 3, 2021; December 29, 2021; January 3, 2022; and January 14, 2022. Father's failure to drug test directly proves that he would not

16

follow an order to drug test. Father's failure to comply with the drug-test requirement indicates that he would not comply with an order not to drive.[6]

Thus, there is no means to protect Minor from Father's intoxicated driving, in which Minor is not strapped into her car seat. Therefore, there would be a substantial danger to Minor's physical health and safety if she were returned to Father's care and there is no reasonable means to protect Minor without removing her from Father's custody. In sum, the removal order is supported by substantial evidence.

## C. VISITATION

Father contends the juvenile court erred by denying him visitation. When the juvenile court denies reunification services, the court may "permit the parent to visit the child." (§ 361.5, subd. (f).) Thus, the juvenile court has discretion to grant or deny visitation. (*In re J.N.* (2006) 138 Cal.App.4th 450, 457.) "[S]ection 361.5, subdivision (f) does not dictate a particular standard the juvenile court must apply when exercising its discretion to permit or deny visitation between a child and a parent who has not been receiving reunification services. The Legislature instead has left this determination to the court's discretion for the narrow group of parents described in section 361.5, subdivision (f), who have been denied reunification services at the outset. [Citation.] . .

---

[6] Father was arrested for driving with a suspended license (Veh. Code, § 14601.1, subd. (a)), in June 2013, September 2013, January 2014, February 2015, April 2020, January 2021, and July 2021, but the record does not include a disposition for any of those cases. We do not use the foregoing arrests in our substantial evidence analysis because Father is presumed innocent. (Pen. Code, § 1096.)

. The best interests of the child is certainly a factor the court can look to in exercising its discretion to permit or deny visitation." (*Id.* at p. 459.)

We apply the abuse of discretion standard in determining whether the juvenile court erred by denying visitation. " ' " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re J.N.*, *supra*, 138 Cal.App.4th at p. 459.)

The juvenile court found that Father places Minor at risk of serious physical harm due to his drug abuse and domestic violence (§ 300, subd. (b)(1)); that he places Minor at risk of serious emotional damage due to sexual abuse (§ 300, subd. (c)); and that he committed sexual abuse (§ 300, subd. (d)). As the juvenile court explained, Father denied all the foregoing issues. Father asserted he did not recently abuse drugs, that he acted in self-defense during the domestic violence, and that Minor was asleep or could not see Father's activity during the two episodes of masturbation so there was no sexual abuse.

The juvenile court could reasonably conclude that with the seriousness of the issues, and Father's complete denial of any responsibility, that visits between Father and Minor would lead to more harm than benefit at this point, and thus the visits would not be in Minor's best interests. Therefore, the juvenile court did not abuse its discretion.

Father contends that, in order to deny visitation, "there must be a showing of detriment to the child. (§ 362.1, subd. (a)(1)(B).)" Father cites to section 362.1, which

18

applies when a child is placed in foster care and reunification services are ordered. (§ 362.1, subd. (a) ["any order placing a child in foster care, and ordering reunification services, shall provide as follows"].) Minor was not placed in foster care and Father was denied reunification services. Therefore, we are not persuaded by Father's reliance on section 362.1, subdivision (a).

Father contends the juvenile court should have ordered supervised visits to eliminate any concerns about Father harming Minor. The juvenile court had discretion to make a different order. (§ 361.5, subd. (f).) However, our role in this case is limited to analyzing whether the order the juvenile court made, i.e., the denial of visitation, constituted an abuse of discretion. Therefore, we do not examine whether a different order may have been preferable.

**DISPOSITION**

The disposition order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

RAMIREZ

P. J.

FIELDS

J.

19